IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND CAPLE, RONNIE BROOKS, JOHNNY JOHNSON, GARY MCMILLIAN, KENNETH MEINERT, TONY HENLEY, CURTIS HARRISON, J.D. SAN MIGAL, and MILTON GRIFFIN | § § § § § § | |
| **Plaintiffs** | § | CIVIL ACTION NO. <u>308 CV-355-M</u> |
| vs. | § § | |
| AN DEALERSHIP HOLDING CORP., WESTGATE CHEVROLET, LTD., MIDWAY CHEVROLET, INC., and PLAINS CHEVROLET, LTD. | § § § § | |
| **Defendants.** | | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATED DISTRICT JUDGE:**

Plaintiffs Raymond Caple, Ronnie Brooks, Johnny Johnson, Gary McMillian, Kenneth Meinert, Tony Henley, Curtis Harrison, J.D. San Migal, and Milton Griffin (collectively, "Plaintiffs") come complaining of and against Defendants AN Dealership Holding Corp., Westgate Chevrolet, Ltd., Midway Chevrolet, Inc., and Plains Chevrolet, Ltd. (collectively, "Defendants"), and file this First Amended Complaint and for in support thereof would show this Honorable Court as follows:

### Parties

1. The Plaintiffs are all individuals residing within the Northern District of Texas.

2. Defendant AN Dealership Holding Corp. f/k/a AutoNation USA Corp. is a Florida corporation doing a substantial amount of business in the state of Texas. Defendant may

be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

3.      Defendant Plains Chevrolet, Ltd. d/b/a Plains Chevrolet is a Texas limited partnership.  Defendant may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

4.      Defendant Westgate Chevrolet Ltd., d/b/a Westgate Chevrolet is a Texas limited partnership.  Defendant may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

5.      Defendant Midway Chevrolet, Inc. d/b/a Midway Chevrolet is a Texas corporation.  Defendant may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

## Jurisdiction & Venue

6.      The Court has jurisdiction over the lawsuit under 28 U.S.C. Section 1332(a)(1), because the Plaintiffs and Defendant AN Dealership Holding Corp. are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Pursuant to 28 U.S.C. Section 1391(a)(2), venue is proper in the Northern District of Texas because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas.

## Factual Background

8. The Defendants have built successful car dealerships in large part by defrauding their employees and customers. The Defendants have taken their business model, based on deceptive trade practices and fraud, and used it to perpetrate nationwide fraud. The Defendants committed consumer fraud on a massive scale, while systematically defrauding and refusing to honor its contracts with members of its sales force. Defendants engaged in activities that are not just unethical, but illegal.

9. Defendants Plains Chevrolet, Westgate Chevrolet and Midway Chevrolet are automobile dealerships in the Amarillo area. Defendant AN Holdings is the parent company owner of these dealerships and owns many other automobile dealerships across the country.

10. Plaintiffs Raymond Caple, Ronnie Brooks, Johnny Johnson, Gary McMillian, Tony Henley, Curtis Harrison, J.D. San Migal, and Milton Griffin worked at Plains Chevrolet as salespersons. Plaintiffs Kenneth Meinert, J.D. San Migal, and Milton Griffin worked at Midway Chevrolet as salespersons. Plaintiff J.D. San Migal worked at Westgate Chevrolet as a salesperson. Defendants agreed to pay these individuals on a commission basis.

11. The Defendants promised to pay the Plaintiffs commissions based on a percentage of gross profits from the sale of vehicles. The Defendants were careful to conceal the manner in which it calculated gross profit of the sale of vehicles. The Defendants represented that the sums paid to the Plaintiffs and the other commissioned salespersons were proper and that the gross profits were accurately calculated. However, the Plaintiffs eventually learned that the Defendants were committing a vast fraud against both its employees and its customers.

12. The Defendants cheated the Plaintiffs and its other commissioned salespersons by (a) adding fictitious and undisclosed cost items (commonly called "packs") to the gross profit calculation, thus deflating and misrepresenting the amount of gross profit; (b) deducting expense

3

items that had no connection to the vehicles in question, thus artificially reducing the apparent gross profit; and (c) failing to include revenues and incentive paid to the Defendants in the calculation of gross profit.  By misrepresenting the amount of gross profit, the Defendants greatly reduced the amount of commissions due to its employees, including the Plaintiffs.

13. The specific scams used by the Defendants to deflate commissions to their employees include, but are not limited to, the following:

(a) <u>The Theft Protection Package.</u>  This pack consisted of etching the vehicle identification number for the vehicle into the glass on the vehicle.  This package cost the Defendants $35.00 to provide, but the Defendants represented to the Plaintiffs that the package cost $149.00, which fraudulently reduced the gross profit on each car sold by the Plaintiffs.

(b) <u>Gap Insurance.</u>  This was insurance provided to the consumer in the event that the car suffers a total loss while the consumer owes more money on the car than the car is worth.  The Defendants fraudulently represented the cost of the gap insurance to the Plaintiffs and deducted the fraudulent cost from the gross profit on the vehicle.

(c) <u>Hot Check Pack.</u>  The Hot Check Pack was a $75.00 fee charged to the gross profit of each vehicle sold by the Plaintiffs, thus reducing the gross profit and the commissions earned by the Plaintiffs.  The Defendants represented to the Plaintiffs that the pack was designed to protect the Defendants in the event that a customer provided a "fake" down payment.  This pack was a fraudulent method by which the Defendants reduced the commissions paid to the Plaintiffs.

(d) <u>Inventory Pack.</u>  The Inventory Pack was a $250.00 fee charged to the gross profit of each vehicle sold by the Plaintiffs, thus reducing the gross profit and the commissions paid to

the Plaintiffs. This pack was a fraudulent method by which the Defendants reduced the commissions earned by the Plaintiffs.

  (e)  <u>Office Pack.</u>  The Office Pack was a $50.00 fee charged to the gross profit of each vehicle sold by the Plaintiffs, thus reducing the gross profit and the commissions earned by the Plaintiffs. This pack was a fraudulent method by which the Defendants reduced the commissions paid to the Plaintiffs.

  (f)  <u>$500.00 Flat Pack.</u>  The $500.00 Flat Pack was originally designed for advertising and wholesale loss, but had the effect of fraudulently reducing the gross profit and the commissions earned by the Plaintiffs. The $500.00 Flat Pack had no basis in law or fact.

  (g)  <u>Wash & Vac Pack.</u>  This pack consisted of washing and cleaning each car before it was delivered to the consumer. The Defendants deducted $25.00 more than the actual cost of the service when calculating the profits upon which Plaintiffs' commissions were based, thereby fraudulently reducing the commissions that the Plaintiffs were owed.

  (h)  <u>Labeling Pack.</u>  This pack related to the information sheets on the cars sold by the Defendants that listed the equipment on each car. The Defendants deducted an additional $40.00 above the cost of providing the service from the gross profit on each vehicle sold, thereby improperly reducing the Plaintiffs' commissions by $40.00.

  (i)  <u>Buyer Fee Pack.</u>  The Buyer Fee Pack was a $200.00 fee charged to the gross profit of each vehicle sold by the Plaintiffs, thus reducing the gross profit and the commissions earned by the Plaintiffs. This pack was a fraudulent method by which the Defendants reduced the commissions paid to the Plaintiffs. Also included in the Buyer Fee Pack was a $175.00 "transportation" fee, which was consistently charged whether the car was purchased at an auction in Dallas or from a local wholesaler one (1) mile from the dealership.

(j)     AutoNation Pack.  The AutoNation Pack was a $50.00 fee charged to the gross profit of each vehicle sold by the Plaintiffs, thus reducing the gross profit and the commissions earned by the Plaintiffs.  This pack was a fraudulent method by which the Defendant reduced the commissions paid to the Plaintiffs.

(k)     Advertising Pack.  The Advertising Pack was a $50.00 fee added to the cost of each vehicle for advertising, despite the fact that advertising costs were already covered in the $500.00 Flat Pack.  This fee was yet another method by which the Defendants fraudulently reduced the commissions owed to the Plaintiffs.

14.     The bogus nature of the above-listed charges was concealed from the Plaintiffs and the other employees.  The Plaintiffs did not discover that the charges were bogus until late 2004.

15.     Over the course of many vehicle sales over a number of years, the cumulative effect of these scams was enormous.  The Plaintiffs estimate that the total amount of unpaid commissions exceeds $2,000,000.

16.     All conditions precedent have been performed or satisfied.

### First Cause of Action: Breach of Contract

17.     The Plaintiffs entered into a contractual relationship with the Defendants under which the Defendants promised to pay them commissions based on gross profits on the sale of vehicles and related items.

18.     The Defendants breached the contract by failing to properly account for the gross profits, by concealing or misstating the means by which gross profits were calculated, and by failing to pay the proper amount of commissions.

19. The Plaintiffs are therefore entitled to an accounting of gross profits and an award of (a) damages based on the correct amount of commissions, (b) pre and post-judgment interest as provided by law, and (c) reasonable attorneys' fees as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

20. The Defendants concealed the existence of their contract breaches, in that they (a) knowingly represented amounts of gross profit that were not true, (b) knowingly represented amounts of commissions that were not accurate, and (c) knowingly concealed the bogus nature of the various packs and charges, even though those facts were necessary to prevent their gross profit and commission calculations from being misleading. The Plaintiffs relied on those representations and could not have discovered the truth through the exercise of reasonable diligence until late 2004.

## Second Cause of Action: Fraud

21. The Defendants represented to the Plaintiffs and the other employees (a) that they would pay commissions as promised; (b) that the gross profits on the sales of vehicles were as shown on the reports available to the employees; and (c) that the amounts paid to the employees were based on gross profits.

22. The Defendants did not intend to pay the commissions as promised, in that they had been using scams to deflate gross profits for years. The Defendants knew that they were misrepresenting the amount of gross profits and commissions to the Plaintiffs and the other employees. Alternatively, the Defendants failed to disclose their accounting practices to the Plaintiffs even though full disclosure was necessary to prevent Defendants' representations regarding commissions from being misleading.

23.     The Plaintiffs relied on Defendants' representations by (a) accepting a commission-based position with the company; and (b) continuing to work for the company in the belief that they were being paid the commissions that they had been promised.

24.     The Plaintiffs are thus entitled to recover damages in the amount of the commissions that Defendants promised, plus pre and post-judgment interest as permitted by law and exemplary damages based on Defendants' fraudulent, malicious, and grossly negligent conduct.

25.     Defendants concealed the existence of their fraud in that they (a) knowingly represented amounts of gross profit that were not true, (b) knowingly represented amounts of commissions that were not accurate, and (c) knowingly concealed the bogus nature of the various packs and charges, even though those facts were necessary to prevent their gross profit and commission calculations from being misleading.  The Plaintiffs relied on those representations and could not have discovered the truth through the exercise of reasonable diligence until late 2004.

## Jury Demand

26.     The Plaintiffs hereby demand a jury trial and tender the appropriate jury fee.

## Prayer

For the foregoing reasons, Plaintiffs Raymond Caple, Ronnie Brooks, Johnny Johnson, Gary McMillian, Kenneth Meinert, Tony Henley, Curtis Harrison, J.D. San Migal, and Milton Griffin are entitled to an award against Defendants AN Dealership Holding, Corp. f/k/a AutoNation USA Corp., Plains Chevrolet, Ltd., Westgate Chevrolet, Ltd. and Midway Chevrolet, Inc., for:

(a)     Actual damages in excess of $2,000,000;

    (b)    Pre and post-judgment interest as permitted by law;

    (c)    Exemplary damages;

    (d)    Reasonable attorneys' fees; and

    (e)    Such other relief to which they may be justly entitled.

Respectfully submitted,

By: s / Charles L. Fridge III /
_____
Charles L. Fridge III
Texas State Bar No. 24004286
Federal I.D. No. 32856
405 Main Street, Suite 800
Houston, Texas 77002
713/226-9100 Phone
713/226-9800 Fax

**ATTORNEY FOR PLAINTIFFS**

OF COUNSEL:

**FRIDGE & RESENDEZ, LLC**
Denise L. Manley
Texas State Bar No. 24032692
405 Main Street, Suite 800
Houston, Texas 77002
(713) 226-9100 telephone
(713) 226-9800 facsimile